# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| SCHEEL PUBLISHING, INC., | ) | CASE NO. 1:20-CV-76 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | JUDGE DAN POLSTER |
| vs. | ) | |
| | ) | |
| RIYAD (ROD) KHLEIF, *et al.* | ) | |
| | ) | |
| *Defendants/Counterclaim* | ) | JURY TRIAL DEMANDED |
| *Plaintiffs,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| J. SCOTT SCHEEL and | ) | |
| CHRISTINE SCHEEL, | ) | **DEFENDANTS' ANSWER,** |
| | ) | **COUNTERCLAIMS AND THIRD-** |
| *Third Party Defendants.* | ) | **PARTY COMPLAINT** |

Defendants Riyad (Rod) Khleif ("Mr. Khleif"), Lifetime Cashflow Academy, LLC ("Lifetime"), and REM Equity Group, LLC ("REM") (collectively, "Defendants"), by and through the undersigned counsel, respond to Plaintiff Scheel Publishing, Inc.'s ("SPI") Complaint. To the extent not specifically admitted, Defendants deny each and every allegation in the Complaint. Defendants incorporate the heading used by SPI in the Complaint for convenience and ease of reference, and deny any allegations, assertions or inferences associated with the same.

## ANSWER TO COMPLAINT

### PARTIES

1. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint, and therefore deny the same.

2. Upon information and belief, Defendants admit the allegations set forth in Paragraph 2 of the Complaint.

3. Upon information and belief, Defendants admit that J. Scott Scheel ("Mr. Scheel") is a principal of SPI. Upon information and belief, Defendants admit that SPI and Mr. Scheel provide education and training on commercial real estate investing. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 3 of the Complaint, and therefore deny the same.

4. Defendants admit that Mr. Khleif is an individual who resides in Nokomis, Florida.

5. Defendants admit that Ms. Lowe is an individual who resides in Nokomis, Florida. Defendants deny the remaining allegations set forth in Paragraph 5 of the Complaint.

6. Defendants admit that Lifetime is a Florida limited liability company and its principal place of business is located in Sarasota, Florida. Defendants admit that Lifetime's Articles of Organization filed September 13, 2016 lists Ms. Lowe as an authorized member and Mr. Khleif as a member. Defendants deny the remaining allegations set forth in Paragraph 6 of the Complaint.

7. Defendants admit that REM is a Florida limited liability company with its principal place of business located in North Venice, Florida. Defendants admit that Mr. Khleif is the manager of REM. Defendants deny the remaining allegations set forth in Paragraph 7 of the Complaint.

## JURISDICTION AND VENUE

8. Defendants admit that jurisdiction is proper because the amount in controversy exceeds $75,000, exclusive of interests and costs. Defendants admit that venue is proper in this District Court. Defendants deny the remaining allegations set forth in Paragraph 8 of the Complaint.

## FACTUAL ALLEGATIONS

9. Upon information and belief, Defendants admit the allegations set forth in Paragraph 9 of the Complaint.

10. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Complaint, and therefore deny the same.

11. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Complaint, and therefore deny the same.

12. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint, and therefore deny the same.

13. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Complaint, and therefore deny the same.

14. Defendants admit that SPI offers a program entitled Diamond Inner Circle.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 14 of the Complaint, and therefore deny the same.

15. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Complaint, and therefore deny the same.

16. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint, and therefore deny the same.

17. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint, and therefore deny the same.

18. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint, and therefore deny the same.

19. Defendants admit that Mr. Khleif met Mr. Scheel at a program planned by SPI. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 19 of the Complaint, and therefore deny the same.

20. Defendants admit that Mr. Khleif attended a program planned by SPI entitled "Land Development Boot Camp" in 2005.

21. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint, and therefore deny the same.

22. Defendants admit that Mr. Khleif and Ms. Lowe attended a program planned by SPI in 2016. Defendants deny the remaining allegations set forth in Paragraph 22 of the Complaint.

23. Defendants admit that Mr. Khleif and Ms. Lowe attended a program planned by SPI entitled "Commercial Property Academy" in 2016. Defendants deny the remaining allegations set forth in Paragraph 23 of the Complaint.

24. Defendants admit that in March of 2016 Mr. Scheel and his wife Christine Scheel approached Mr. Khleif about joining the Diamond Inner Circle program. Defendants deny the remaining allegations set forth in Paragraph 24 of the Complaint.

25. Mr. Khleif admits that in reliance of Mr. Scheel's representations in March of 2016, he negotiated to join the Diamond Inner Circle on a payment plan to see if the program was for him. Defendants deny the remaining allegations set forth in Paragraph 25 of the Complaint.

26. Mr. Khleif admits that the negotiated payment plan included an initial $5,000 deposit in March of 2016 and successive $2,000 payments, until Mr. Scheel waived the remaining balance. Defendants deny the remaining allegations set forth in Paragraph 26 of the Complaint.

27. Upon information and belief, Defendants admit that Exhibit A appears to be a copy of an Application for J. Scott Scheel's Diamond Inner Circle ("Application"). The Application speaks

for itself.  Mr. Khleif also completed a Diamond Inner Circle In-Take Questionnaire.  In response to the question "What types of properties are you interested in and why?" Mr. Khleif answered "Multifamily because I know it."  Defendants deny the remaining allegations set forth in Paragraph 27 of the Complaint.

28. Upon information and belief, Defendants admit that Exhibit B appears to be a copy of a Diamond Inner Circle Service Agreement ("Service Agreement").  Mr. Khleif admits that he executed the Service Agreement.

29. Defendants admit that the Service Agreement states that "[t]he laws of the State of Ohio shall govern this Agreement and Participant and SPI agree that the exclusive venue shall be state and federal courts located in Cuyahoga County, Ohio."  Defendants deny the remaining allegations set forth in Paragraph 29 of the Complaint.

30. Defendants admit that the Service Agreement states:

> In the event any payments are missed on Option #2 and to the extent permitted by law, unpaid amounts shall accrue interest at the lesser of the maximum amount permitted to be charged by law or one and 5/10 percent (1.5%) per month and SPI shall be entitled to receive all collections costs and expenses including but not limited to reasonable attorneys' fees.

Mr. Khleif performed his obligations under the Service Agreement by, *inter alia*, paying successive $2,000 payments, until Mr. Scheel waived the remaining balance.  Defendants deny the remaining allegations set forth in Paragraph 30 of the Complaint.

31. Defendants admit that the Service Agreement includes a provision regarding intellectual property.  The intellectual property provision speaks for itself.  Defendants deny the remaining allegations set forth in Paragraph 31 of the Complaint.

32. Defendants admit that Mr. Khleif signed the Service Agreement and made an initial $5,000 deposit in March 2016. Defendants deny the remaining allegations set forth in Paragraph 32 of the Complaint.

33. Defendants admit that Mr. Khleif entered information into the Companion Membership section of the Service Agreement. Defendants deny the remaining allegations set forth in Paragraph 33 of the Complaint.

34. Defendants deny that Ms. Lowe agreed to the terms of the Service Agreement. The plain and unambiguous language of the Service Agreement defines the parties to the agreement as follows:

> This Service Agreement ("Agreement") is made and entered into between the undersigned Participant named below and Scheel Publishing Inc., and Ohio corporation ("SPI") as of the date of the last party to execute this Agreement.

Nowhere within the Participant Information or Companion Membership sections of the Service Agreement (or anywhere else) does it state that a companion member is a party to the Service Agreement. Further, the parties agree that only Mr. Khleif executed the Service Agreement. Defendants deny the remaining allegations set forth in Paragraph 34 of the Complaint.

35. Defendants deny the allegations set forth in Paragraph 35 of the Complaint. Mr. Khleif's answer in the questionnaire does not state that he only owned one apartment complex, but merely states that apartment complex is a category in which he has done commercial deals. Mr. Khleif has been involved in the real estate business for over forty years and for thirty years has owned a residential/commercial real estate property management company. Mr. Khleif was formerly a real estate broker, and over the last forty years has owned over 2,000 properties including multifamily houses, and numerous commercial properties and apartments in three different states.

36. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Complaint, and therefore deny the same.

37. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 of the Complaint, and therefore deny the same.

38. Defendants admit that Mr. Khleif performed his obligations under the Service Agreement by, *inter alia*, paying successive $2,000 payments, until on or about September 14, 2016, when Mr. Scheel informed him that he would agree to put the remaining $10,000 on hold for three months and contact Mr. Khleif in December 2016 regarding rejoining the Diamond Inner Circle. A true and correct copy of the communication is attached hereto as Exhibit A to Defendants' Counterclaim. Since close to two years passed with no communication from Mr. Scheel or SPI, the remaining $10,000 has been waived, due to SPI's intentional conduct. Defendants deny the remaining allegations set forth in Paragraph 38 of the Complaint.

39. Defendants admit that Mr. Khleif and REM attended a Diamond Inner Circle meeting in Cleveland on August 3-4, 2016. Defendants admit that Mr. Khleif and REM made a presentation at the meeting. Defendants deny the remaining allegations set forth in Paragraph 39 of the Complaint.

40. Upon information and belief, Defendants admit that Exhibit C appears to be a copy of an Invoice dated August 25, 2016 ("Invoice"). Defendants deny the remaining allegations set forth in Paragraph 40 of the Complaint.

41. Defendants admit that Mr. Khleif made no additional payments after August of 2016. Mr. Khleif performed his obligations under the Service Agreement by, *inter alia*, paying successive $2,000 payments, until on or about September 14, 2016, when Mr. Scheel informed him that he would agree to put the remaining $10,000 on hold for three months and contact Mr. Khleif in

December regarding rejoining the Diamond Inner Circle. Since close to two years passed with no communication from Mr. Scheel or SPI, the remaining $10,000 has been waived, due to SPI's intentional conduct. Defendants deny the remaining allegations set forth in Paragraph 41 of the Complaint.

42. Defendants admit that Mr. Scheel appeared on Mr. Khleif's podcast on July 28, 2016. The podcast speaks for itself. Prior to Mr. Scheel's appearance, other guests appeared on Mr. Khleif's podcast with experience investing in and managing multifamily housing. Defendants deny the remaining allegations set forth in Paragraph 42 of the Complaint.

43. Defendants admit that Mr. Khleif formed REM on June 2, 2016. Defendants deny the remaining allegations set forth in Paragraph 43 of the Complaint.

44. Defendants admit that Lifetime was formed on September 13, 2016. Defendants admit that Lifetime's Articles of Organization filed September 13, 2016 lists Ms. Lowe as an authorized member and Mr. Khleif as a member. Mr. Khleif's podcast entitled "Lifetime Cash Flow Through Real Estate Investing," which focuses on multifamily investment, launched prior to Mr. Khleif joining the Diamond Inner Circle. The podcast launched with three interviews from guests with experience investing in and managing multifamily housing, prior to Defendants participating in the Diamond Inner Circle. Defendants deny the remaining allegations set forth in Paragraph 44 of the Complaint.

45. Defendants deny the allegations set forth in Paragraph 45 of the Complaint. Mr. Khleif performed his obligations under the Service Agreement by, *inter alia*, paying successive $2,000 payments, until Mr. Scheel waived the remaining balance.

46. Defendants deny the allegations set forth in Paragraph 46 of the Complaint.

47. Defendants deny the allegations set forth in Paragraph 47 of the Complaint. The content of Mr. Khleif's book and his Multifamily Bootcamp are drawn from Mr. Khleif's years of experience in real estate investing, the numerous commercial real estate bootcamps and trainings Mr. Khleif consumed before meeting Mr. Scheel. Further, the set-up of Mr. Khleif's programs included the additional help of an expert in land flipping, as well as an expert in mobile home parks, both of whom Mr. Khleif has known and been involved with prior to his involvement with SPI. In fact, Mr. Scheel's manuals from three of his bootcamp, as well as the manual from Mr. Scheel's home study course, include extensive amounts of plagiarized material. For example, one book published in 2016 ran through plagiarism software found that the negotiation strategies were copied. Other examples of plagiarism are attached hereto as Exhibit F to Defendants' Counterclaim.

48. Defendants deny the allegations set forth in Paragraph 48 of the Complaint. The content of Mr. Khleif's book and his Multifamily Bootcamp are drawn from Mr. Khleif's years of experience in real estate investing, the numerous commercial real estate bootcamps and trainings Mr. Khleif consumed before meeting Mr. Scheel. Further, the set-up of Mr. Khleif's programs included the additional help of an expert in land flipping, as well as an expert in mobile home parks, both of whom Mr. Khleif has known and been involved with prior to his involvement with SPI. Mr. Khleif has spent enormous amounts of time and focus on self-improvement in every area of a person's life. Mr. Khleif focuses on self-actualization, goal setting and visualization, pushing through fear and failure, eliminated limiting beliefs and much more, which distinguish him, his book and his work from any other entity in the same space.

49. Defendants admit that Mr. Khleif is the author of the book entitled "How to Create Lifetime Cash Flow Through Multifamily Properties." Defendants deny the remaining allegations set forth in Paragraph 49 of the Complaint.

50. Defendants admit that a version of Mr. Khleif's "How to Create Lifetime Cash Flow Through Multi-Family Properties" included an acknowledgement to Mr. Scheel. Defendants deny the remaining allegations set forth in Paragraph 50 of the Complaint.

51. Defendants deny the allegations set forth in Paragraph 51 of the Complaint.

52. Defendants admit that Lifetime offered a live event entitled "Multifamily Bootcamp: How to Buy an Apartment Building in 90 Days!" presented by Mr. Khleif. Defendants deny the remaining allegations set forth in Paragraph 52 of the Complaint.

53. Defendants admit that Lifetime's website advertises Multifamily Bootcamps presented by Mr. Khleif. Defendants deny the remaining allegations set forth in Paragraph 53 of the Complaint.

54. Defendants deny the allegations set forth in Paragraph 54 of the Complaint.

55. Defendants admit that Mr. Khleif's website offers the "Lifetime Cash Flow Deal Desk" software. Defendant Lifetime's software is an Excel Spreadsheet which was completely created by Lifetime's CFO and has no similarities to SPI's software. Defendants deny the remaining allegations set forth in Paragraph 55 of the Complaint.

56. Defendants deny the allegations set forth in Paragraph 56 of the Complaint. Mr. Khleif has been involved in the real estate business for over forty years and for thirty years has owned a residential/commercial real estate property management company. Mr. Khleif was formerly a real estate broker, and over the last forty years has owned over 2,000 properties including, multifamily houses, and numerous commercial properties and apartments in three different states. Mr. Khleif's podcast entitled "Lifetime Cash Flow Through Real Estate Investing," which focuses on multifamily investment, launched prior to Mr. Khleif joining the Diamond Inner Circle. The podcast launched with three interviews from guests with experience investing in and managing multifamily housing.

57. Defendants deny the allegations set forth in Paragraph 57 of the Complaint.

58. Defendants deny the allegations set forth in Paragraph 58 of the Complaint.

59. Defendants deny the allegations set forth in Paragraph 59 of the Complaint. Mr. Khleif performed his obligations under the Service Agreement by, *inter alia*, paying successive $2,000 payments, until Mr. Scheel waived the remaining balance.

60. Upon information and belief, Defendants admit that Exhibit D appears to be a screenshot of REM's website dated November 7, 2018 ("Website Screenshot"). The Website Screenshot speaks for itself. Defendants deny the remaining allegations set forth in Paragraph 60 of the Complaint.

61. Upon information and belief, Defendants admit that Exhibit D appears to be a screenshot of REM's website dated November 7, 2018 ("Website Screenshot"). The Website Screenshot speaks for itself. Defendants deny the remaining allegations set forth in Paragraph 61 of the Complaint.

62. Upon information and belief, Defendants admit that Exhibit D appears to be a screenshot of REM's website dated November 7, 2018 ("Website Screenshot"). The Website Screenshot speaks for itself.

63. Upon information and belief, Defendants admit that Exhibit E appears to be a screenshot of the management team page of REM's website dated November 7, 2018 ("Management Team Website Screenshot"). The Management Team Website Screenshot speaks for itself.

64. Defendants admit that Mr. Khleif is friends with people that attended the Diamond Inner Circle program and maintains a non-business relationship with them. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 64 of the Complaint, and therefore deny the same.

65. Defendants deny the allegations set forth in Paragraph 65 of the Complaint. Mr. Khleif has been involved in the real estate business for over forty years and for thirty years has owned a residential/commercial real estate property management company. Mr. Khleif was formerly a real estate broker, and over the last forty years has owned over 2,000 properties including, multifamily houses, and numerous commercial properties and apartments in three different states.

66. Defendants deny the allegations set forth in Paragraph 66 of the Complaint.

## <u>COUNT ONE</u>
### (Breach of Contract against Khleif and Lowe-Khleif)

67. Defendants deny the legal sufficiency of SPI's claims and allegations. Defendants repeat and reiterate their responses to the allegations set forth in Paragraphs 1-66 above.

68. Defendants admit that Mr. Khleif and SPI entered into a Diamond Inner Circle Service Agreement ("Service Agreement") in or about March of 2016. Defendants deny the remaining allegations set forth in Paragraph 68 of the Complaint.

69. Defendants deny the allegations set forth in Paragraph 69 of the Complaint.

70. Defendants deny the allegations set forth in Paragraph 70 of the Complaint.

71. Defendants deny the allegations set forth in Paragraph 71 of the Complaint.

72. Defendants deny the allegations set forth in Paragraph 72 of the Complaint.

73. Defendants deny the allegations set forth in Paragraph 73 of the Complaint.

74. Defendants deny the allegations set forth in Paragraph 74 of the Complaint.

**COUNT TWO**
**(Misappropriation of Trade Secrets against Khleif, Lowe-Khleif and Lifetime)**

75. Defendants deny the legal sufficiency of SPI's claims and allegations. Defendants repeat and reiterate their responses to the allegations set forth in Paragraphs 1-74 above.

76. Defendants deny the allegations set forth in Paragraph 76 of the Complaint.

77. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 77 of the Complaint, and therefore deny the same.

78. Defendants deny the allegations set forth in Paragraph 78 of the Complaint.

79. Defendants deny the allegations set forth in Paragraph 79 of the Complaint.

80. Defendants deny the allegations set forth in Paragraph 80 of the Complaint.

81. Defendants deny the allegations set forth in Paragraph 81 of the Complaint.

82. Defendants deny the allegations set forth in Paragraph 82 of the Complaint.

**COUNT THREE**
**(Deceptive Trade Practices against Khleif, Lifetime and REM)**

83. Defendants deny the legal sufficiency of SPI's claims and allegations. Defendants repeat and reiterate their responses to the allegations set forth in Paragraphs 1-82 above.

84. Defendants state that Paragraph 84 is a statement of law, therefore no response is required. To the extent that a response is required, Defendants deny the legal sufficiency of SPI's claims.

85. Defendants state that Paragraph 85 is a statement of law, therefore no response is required. To the extent that a response is required, Defendants deny the legal sufficiency of SPI's claims.

86. Defendants deny the allegations set forth in Paragraph 86 of the Complaint.

87. Defendants deny the allegations set forth in Paragraph 87 of the Complaint.

88. Defendants deny the allegations set forth in Paragraph 88 of the Complaint.

89. Defendants deny the allegations set forth in Paragraph 89 of the Complaint.

13

90. Defendants deny the allegations set forth in Paragraph 90 of the Complaint.

91. Defendants deny the allegations set forth in Paragraph 91 of the Complaint.

## COUNT FOUR
### (Tortious Interference with a Business Relationship against Khleif and REM)

92. Defendants deny the legal sufficiency of SPI's claims and allegations. Defendants repeat and reiterate their responses to the allegations set forth in Paragraphs 1-91 above.

93. Defendants are without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 93 of the Complaint, and therefore deny the same.

94. Defendants deny the allegations set forth in Paragraph 94 of the Complaint.

95. Defendants deny the allegations set forth in Paragraph 95 of the Complaint.

96. Defendants deny the allegations set forth in Paragraph 96 of the Complaint.

97. Defendants deny the allegations set forth in Paragraph 97 of the Complaint.

98. Defendants deny the allegations set forth in Paragraph 98 of the Complaint.

99. Defendants deny the allegations set forth in Paragraph 99 of the Complaint.

Defendants deny that SPI is entitled to any relief sought.

## AFFIRMATIVE DEFENSES

1. Defendants assert the following defenses and reserve the right to amend their Answer to the Complaint as additional information becomes available. Defendants further reserve the right to rely upon and plead additional defenses that may be revealed or discovered throughout the pendency of this proceeding.

## FIRST DEFENSE

2. SPI's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

## SECOND DEFENSE

3.  At all times, Defendants have engaged in reasonable and lawful conduct.

## THIRD DEFENSE

4.  SPI waived the balance of the participation fee by choosing to not contact Mr. Khleif for close to two years after suspending payments.

## FOURTH DEFENSE

5.  SPI's claims are barred, in whole or in part, by the doctrine of estoppel by laches.

## FIFTH DEFENSE

6.  SPI's claims are barred, in whole or in part, by the doctrine of unclean hands.

## SIXTH DEFENSE

7.  SPI's claims fail in whole or in part to the extent that they have suffered no damages.

## SEVENTH DEFENSE

8.  SPI's claims are barred because SPI has not sustained any cognizable injury attributable to Defendants' conduct.

## EIGHTH DEFENSE

9.  SPI's claims are barred, in whole or in part, because SPI failed to mitigate damages.

## NINTH DEFENSE

10. SPI's claims are barred, in whole or in part, because SPI's lawsuit constitutes prohibited frivolous conduct in violation of O.R.C. § 2323.51.

## ADDITIONAL DEFENSES

11. Defendants reserve the right to assert any additional or further affirmative defenses which may arise in the course of this proceeding.

WHEREFORE, Defendants respectfully demand Judgment dismissing the Complaint with prejudice and granting Defendants such other and further relief as this Court deems just, proper and equitable.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Counterclaim Plaintiffs Riyad (Rod) Khleif ("Mr. Khleif"), Lifetime Cashflow Academy, LLC ("Lifetime"), and REM Equity Group, LLC ("REM") (collectively, "Counterclaim Plaintiffs"), hereby allege against Counterclaim Defendant Scheel Publishing, Inc. ("SPI") and Third-Party Defendants J. Scott Scheel ("Mr. Scheel"), and Christine Scheel ("Mrs. Scheel") (collectively, "Third-Party Defendants") as follows:

### PARTIES

1. Mr. Khleif is an individual residing in Nokomis, Florida.

2. Lifetime is a Florida limited liability company and its principal place of business is located in Sarasota, Florida.

3. REM is a Florida limited liability company with its principal place of business located in North Venice, Florida.

4. Upon information and belief, SPI is an Ohio corporation having a principal place of business at 1940 East Sixth Street, Cleveland, Ohio 44114.

5. Upon information and belief, Mr. Scheel is an individual residing in Willoughby, Ohio.

6. Upon information and belief, Mrs. Scheel is an individual residing in Willoughby, Ohio.

### JURISDICTION

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Counterclaim Plaintiffs, Counterclaim Defendant, and Third-Party Defendants and the amount in controversy exceeds

$75,000, exclusive of interest and costs. Alternatively, the Court has supplemental jurisdiction (pursuant to §1367) over the counterclaims.

8. This Court has personal jurisdiction over SPI because SPI is a party to a Service Agreement (out of which these counterclaims arise) that contains a provision allowing actions to resolve disputes under the Service Agreement to be brought only in Ohio, and because SPI submitted itself to the Court's jurisdiction by filing the instant action, by which it purposefully availed itself of the benefits and protections of this Court.

9. This Court has personal jurisdiction over Mr. Scheel, because Mr. Scheel committed the underlying tortious acts within the State of Ohio. Therefore, the Court has personal jurisdiction over Mr. Scheel pursuant to O.R.C. § 2307.382 and venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c).

10. This Court has personal jurisdiction over Mrs. Scheel, because Mrs. Scheel committed the underlying tortious acts within the State of Ohio. Therefore, the Court has personal jurisdiction over Mrs. Scheel pursuant to O.R.C. § 2307.382 and venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c).

<b><u>FACTUAL ALLEGATIONS</u></b>

11. Mr. Khleif has been involved in the real estate business for over forty years and for thirty years has owned a residential/commercial real estate property management company. Mr. Khleif was formerly a real estate broker, and over the last forty years has owned over 2,000 properties, including single family houses, multi-family houses and numerous commercial properties and apartments.

12. Over the decades, Mr. Khleif has been to numerous conferences and training events on commercial real estate investing, including Certified Commercial Investment Member ("CCIM")

17

Institute courses. The CCIM Institute is well-known in the industry for educating real estate specialists in various industry categories.

13. Prior to the dispute, Mr. Khleif also attended training events held by Counterclaim Defendant SPI and Mr. Scheel.

14. In 2005, Mr. Khleif attended the event entitled "Commercial Property Academy" and met Mr. Scheel, the principal of SPI. Mr. Khleif also attended the SPI event entitled "Land Development Boot Camp" in Atlanta. In 2006, Mr. Khleif attended at least one SPI event, but thereafter did not attend any SPI event.

15. Approximately ten years later, on March 18, 2016, Mr. Khleif attended the SPI event entitled "Commercial Property Academy" presented by Mr. Scheel.

16. During an afternoon break at Mr. Scheel's bootcamp, Mr. Khleif had a conversation with Mrs. Scheel whereby she encouraged Mr. Khleif to join the Diamond Inner Circle.

17. Mr. Khleif informed Mrs. Scheel that he was interested in programs geared towards multifamily. Mrs. Scheel indicated that the Diamond Inner Circle was directed towards multifamily.

18. At the end of the days' training at Mr. Scheel's bootcamp, Mr. Khleif approached and spoke with Mr. Scheel about the Diamond Inner Circle.

19. Mr. Scheel was aware that Mr. Khleif's experience and primary interest was focused on multifamily.

20. Mr. Khleif asked Mr. Scheel about the framework and focus of the Diamond Inner Circle. Mr. Scheel indicated that the Diamond Inner Circle was heavily geared towards multifamily.

21. Mr. Khleif in reliance on Mr. and Mrs. Scheel's representations, negotiated to join the Diamond Inner Circle on a payment plan to see if the program was what he was looking for due to his various other projects and commitments related to multifamily real estate investing.

22. For example, Mr. Khleif launched his podcast entitled "Lifetime Cash Flow Through Real Estate Investing," which focuses on multifamily investment, with three interviews from guests with experience investing in and managing multifamily housing, prior to joining the Diamond Inner Circle.

23. On or about March 18, 2016, Mr. Khleif signed the Diamond Inner Circle Service Agreement ("Service Agreement"). A true and correct copy of the Service Agreement is attached hereto as Exhibit A.

24. The plain and unambiguous language of the Service Agreement defines the parties to the agreement as follows:

> This Service Agreement ("Agreement") is made and entered into between the undersigned Participant named below and Scheel Publishing Inc., and Ohio corporation ("SPI") as of the date of the last party to execute this Agreement.

25. Mr. Khleif is listed in the Participant Information section of the Service Agreement, while the name "Tiffany Khleif" is listed as a companion member in the Companion Membership section of the Service Agreement.

26. Nowhere within the Participant Information or Companion Membership sections of the Service Agreement (or anywhere else) does it state that a companion member is a party to the Service Agreement.

27. During his membership in the Diamond Inner Circle, Mr. Khleif attended two meetings where the Diamond Inner Circle focused on investing in retail assets.

19

28. The first meeting was held in Las Vegas and in conjunction with a conference for ICSC (retail shopping centers). This ICSC conference is the largest event of its type for retail investment.

29. The second meeting was in Cleveland on August 3-4, 2016, which also focused on retail and included a bus tour to look at Mr. Scheel's retail assets.

30. Both Diamond Inner Circle meetings consisted of members showing PowerPoint Presentations regarding their success in primarily the retail sector of real estate, with little or no actual training taking place, and minimal discussion regarding multifamily managing or investing.

31. Once it was clear to Mr. Khleif that Mr. and Mrs. Scheel had misrepresented that the Diamond Inner Circle was heavily focused on multifamily real estate investing, Mr. Khleif did not attend any further Diamond Inner Circle meetings. Mr. Khleif would not have joined the Diamond Inner Circle without Mr. and Mrs. Scheel's misrepresentations of the focus of the Diamond Inner Circle.

32. On September 14, 2016, Mr. Scheel informed Mr. Khleif that he would put the remaining $10,000 of the initiation fee for the Diamond Inner Circle and Mr. Khleif's membership on hold for three months. Further, Mr. Scheel's office indicated that they would contact Mr. Khleif in December 2016 regarding rejoining. A true and correct copy of the communication is attached hereto as Exhibit B.

33. Mr. Khleif received no further communication from SPI regarding his Diamond Inner Circle membership in 2016 and throughout 2017.

34. On August 7, 2018, for the first time in nearly two years, Mr. Khleif received a communication from SPI. SPI alleged, *inter alia*, that Mr. Khleif had breached the Diamond Inner Circle Service Agreement by failing to pay the remaining balance of the initiation fee (although SPI had intentionally waived the balance) and that Mr. Khleif's manual copied SPI's training

materials. For the first, and last time, Plaintiff alleged copyright infringement yet no such cause of action is set forth within this action. A true and correct copy of the communication is attached hereto as Exhibit C.

35. On August 28, 2018, Mr. Khleif's counsel responded to SPI's baseless demands and explained, *inter alia*, that Mr. Khleif's book did not copy any of SPI's materials and that Mr. Khleif had not otherwise breached the Diamond Inner Circle Service Agreement. Further, Mr. Khleif's counsel pointed out that SPI had failed to provide sufficient information to determine which of Mr. Scheel's material that SPI believed is infringed, as well as which portions of Mr. Khleif's material SPI believes are infringing.

36. In response, on November 7, 2018, SPI attached a Draft Complaint that it intended to file, which included Counterclaim Plaintiffs Mr. Khleif, REM, and Lifetime. A true and correct copy of the Draft Complaint is attached hereto as Exhibit D.

37. On November 29, 2018, Mr. Khleif's counsel responded by specifically outlining the baseless nature of SPI's draft complaint. Specifically, the materials which SPI claims were misappropriated were copies of materials provide at a three-day event by Mr. Scheel and not by the Diamond Inner Circle, and therefore not covered by the Service Agreement. Further, the information identified in the draft complaint as allegedly "proprietary and confidential teaching materials" did not qualify as trade secret under Ohio law, because, *inter alia*, no reasonable efforts under the circumstances were made to maintain their secrecy. A true and correct copy of the communication is attached hereto as Exhibit E.

38. The parties exchanged various letters throughout 2019, with SPI maintaining its untenable position that is not supported in law or fact in the face of Counterclaim Plaintiffs' evidence that SPI had no valid causes of actions.

21

39. In fact, Mr. Scheel's manuals from three of his bootcamp, as well as the manual from Mr. Scheel's home study course, include extensive amounts of plagiarized material. For example, one book published in 2016 ran through plagiarism software found that the negotiation strategies were copied. Other examples of plagiarism are attached hereto as Exhibit F.

40. Ultimately the draft complaint was filed with minimal changes, although Counterclaim Plaintiffs repeatedly informed SPI of the baseless nature of their allegations.

## COUNT I
## COMMON LAW FRAUD

41. Counterclaim Plaintiffs repeat and re-allege Paragraphs 1-40 of their Counterclaims/Third-Party Complaint as if fully set forth herein.

42. Counterclaim Defendant and Third-Party Defendants represented to Mr. Khleif that the Diamond Inner Circle focused on multifamily.

43. Counterclaim Defendant and Third-Party Defendants made these statements with knowledge of their falsity or with utter disregard and recklessness regarding their truth or falsity. Among the numerous statements that were made were statements that the Diamond Inner Circle focused on multifamily when in fact the Diamond Inner Circle focused on investing in retail assets.

44. Counterclaim Defendant and Third-Party Defendants made these statements with the intent to mislead Mr. Khleif into joining the Diamond Inner Circle and signing a one-year Service Agreement in reliance on the representations.

45. Mr. Khleif justifiably relied on the statements and misrepresentations by joining the Diamond Inner Circle and paying $15,000 for the service, until on or about September 14, 2016, when Mr. Scheel informed him that he would agree to put the remaining $10,000 on hold for three months and contact Mr. Khleif in December 2016 regarding rejoining the Diamond Inner Circle.

46. Mr. Khleif was proximately injured as a results of his reliance.

**COUNT II**
**NEGLIGENT MISREPRESENTATION**

47. Counterclaim Plaintiffs repeat and re-allege Paragraphs 1-46 of their Counterclaims/Third-Party Complaint as if fully set forth herein.

48. Mr. Scheel is a principal of SPI and SPI provides education and training on commercial real estate investing.

49. Third-Party Defendant Mr. Scheel misrepresented to Mr. Khleif that the Diamond Inner Circle focused on multifamily during a SPI event entitled "Commercial Property Academy" on March 18, 2016.

50. Third-Party Defendant Mr. Scheel failed to exercise reasonable care or competence in obtaining and communicating to Mr. Khleif that the Diamond Inner Circle instead focused on investing in retail assets.

51. Mr. Khleif justifiably relied on the statements and misrepresentations by joining the Diamond Inner Circle and paying $15,000, until on or about September 14, 2016, when Mr. Scheel informed him that he would agree to put the remaining $10,000 on hold for three months and contact Mr. Khleif in December 2016 regarding rejoining the Diamond Inner Circle.

52. Mr. Khleif was proximately injured as a results of his reliance.

53. Additionally, Third-Party Defendant Mr. Scheel's statements were made for his own personal interest, the self-business interest of SPI, and were willful, wanton, and done with a conscious disregard or indifference to the consequences and with a specific intent to harm. Accordingly, Mr. Khleif is entitled to the recovery of his attorneys' fees and punitive damages against Mr. Scheel in an amount to be proven at trial.

23

## COUNT III
## FRIVOLOUS CONDUCT

54. Counterclaim Plaintiffs repeat and re-allege Paragraphs 1-53 of their Counterclaims/Third-Party as if fully set forth herein.

55. This civil action was filed, and the claims asserted, and positions taken herein, have been filed, asserted, and taken by Counterclaim Defendant SPI and Third-Party Defendant Mr. Scheel, in whole or in substantial part, so as to harass and maliciously injure Counterclaim Plaintiffs.

56. This civil action was filed, and the claims asserted and positions taken herein, have been filed, asserted, and taken by Counterclaim Defendant SPI and Third-Party Defendant Mr. Scheel, in whole or in substantial part although they are not warranted by existing law, they cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, and they cannot be supported by a good faith argument for the establishment of new law.

57. This civil action was filed, and the claims asserted and positions taken herein, have been filed, asserted, and taken by Counterclaim Defendant SPI and Third-Party Defendant Mr. Scheel, in whole or in substantial part, even though they consist of allegations and other factual contentions that have no evidentiary support and are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

58. A previous example of Mr. Scheel pursuing an entity for money can be seen in a prior litigation involving the casino Rock Ohio Caesars Cleveland where, after Mr. and Mrs. Scheel were involved in an altercation at the casino, Mr. Scheel stated to Mrs. Scheel that she did not know "how much [money they] were going to make off of this." At that time, the casino permanently banned Mr. and Mrs. Scheel.

59. The foregoing misconduct by Counterclaim Defendant SPI and Third-Party Defendant Mr. Scheel constitute frivolous conduct within the meaning of O.R.C. § 2323.51.

60. Counterclaim Plaintiffs have been adversely affected by the frivolous conduct of Counterclaim Defendant SPI and Third-Party Defendant Mr. Scheel.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs pray for judgment against Counterclaim Defendant/Third-Party Defendants as follows:

A. A judgment in favor of Mr. Khleif against Counterclaim Defendant/Third-Party Defendant's fraudulent conduct;

B. A judgment in favor of Mr. Khleif against Mr. Scheel for negligent misrepresentation;

C. A judgment in favor of Counterclaim Plaintiffs against Counterclaim Defendant SPI for the amount of the attorney's fees and costs and expenses that reasonably have been and will be incurred by the Counterclaim Plaintiffs that are necessitated by Counterclaim Defendant SPI and Third-Party Defendant Mr. Scheel's frivolous conduct;

D. A judgment awarding Counterclaim Plaintiffs any such further relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Defendants demand a jury trial on all claims and counterclaims and as to all issues that may be tried by a jury.

Respectfully submitted,

**EMERSON THOMSON BENNETT, LLC**

*s/John M. Skeriotis*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorney for Defendants Riyad (Rod) Khleif, Tiffany Lowe, Lifetime Cashflow Academy, LLC, and REM Equity Group, LLC.*